UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES T. WHITTINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:14-cv-01533-RLY-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that the plaintiff's disability ended effective December 14, 2011.

## Introduction

By a decision entered in August 2002, the Social Security Administration had determined that plaintiff James T. Whittington was disabled as of December 12, 2002, for a mental impairment that met listing 12.03a. About nine years later, in connection with a review of Mr. Whittington's continued disability, the Agency decided Mr. Whittington was no longer disabled as of December 14, 2011. Mr. Whittington challenged that determination, and a hearing was held before an

administrative law judge on May 31, 2013. Acting for the Commissioner of the Social Security Administration, the ALJ issued a decision on June 16, 2013, finding that Mr. Whittington's disability ended as of December 14, 2011. The Appeals Council denied review of the ALJ's decision on July 18, 2014, rendering the ALJ's decision for the Commissioner final. Mr. Whittington timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Whittington contends the Commissioner's decision must be reversed and remanded because the ALJ failed properly to evaluate an opinion by Dr. J. Nathan Smith.

The court will first describe the legal framework for evaluating whether a person's disability has ended and the court's standard of review, and then address Mr. Whittington's specific assertion of error.

## **Standard for Disability Continuation or Cessation**

Under 42 U.S.C. § 423(f), disability benefits may be terminated under certain circumstances including, as relevant here, because the physical or mental impairment that was the basis for benefits "has ceased, does not exist, or is not disabling." A determination that the disabling impairment is no longer disabling must be based on certain findings as set forth in Section 423(f), and must be "made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." *Id.* The Social Security Administration ("SSA") has

implemented these statutory standards by, in part, prescribing an eight-step sequential evaluation process for determining whether disability continues or has ended. 20 C.F.R. § 404.1594.

Step one asks if the claimant is engaged in substantial gainful activity that is not part of any applicable trial work period; if he is, then he is no longer disabled. Step two asks whether the claimant suffers from impairments, singly or in combination, that meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling. If a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant's disability continues.

The third step considers whether "medical improvement" has occurred and has increased the person's capacity to work (the fourth step). If so, the analysis proceeds to step six. Even if there has not been medical improvement, there are other grounds—at step five—for determining whether disability is continuing or has ended. A step five analysis is not pertinent in Mr. Whittington's case.

Step six asks whether the claimant's current impairments, singly or in combination, are severe; if they are not, the claimant is no longer disabled. If the claimant's impairments are severe, then his residual functional capacity is determined for purposes of steps seven and eight. At step seven, if the claimant has the RFC to perform his past relevant work, then he is no longer disabled. The

eighth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is no longer disabled.

The individual claiming his disability has continued bears the burden of proof at steps one through seven. If the claimant meets that burden, then the Commissioner has the burden at step eight to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity.

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the

evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

I.  **The ALJ's Sequential Findings**

Mr. Whittington was born in 1975, was 27 years old when he was found disabled in 2002, and was 36 years old as of December 14, 2011, the date as of which the ALJ found him no longer disabled.

In applying the eight-step analysis, the ALJ noted that the "comparison point decision" or "CPD" is the December 12, 2002 determination by SSA that Mr. Whittington was disabled. At that time, his medical impairments were residuals of right hip and leg pain due to prior gunshot wounds, obesity, depression, anxiety, and schizoaffective disorder. His disability was based on a finding that his schizoaffective disorder met listing 12.03.

At step one, the ALJ found that Mr. Whittington had not engaged in substantial gainful activity since he had been found disabled. At step two, he determined that Mr. Whittington had not developed additional impairments after the CPD date and none of his medical impairments—those related to his prior gunshot wounds, his obesity, and his depression, anxiety and schizoaffective disorder—met or equaled a listing. At steps three and four, the ALJ found that as of December 14, 2011, Mr. Whittington had experienced medical improvement and the improvement increased his capacity to work. He found Mr. Whittington's schizoaffective disorder had lessened in severity and Mr. Whittington "is no longer

5

seriously disturbed by his cognitive problems." (R. 22). Moving to step six, the ALJ determined Mr. Whittington continues to suffer from severe impairments, including "residuals of remote gunshot wounds to the right leg," and he then determined Mr. Whittington's RFC as of, and after, December 14, 2011 (the date the Agency had determined he was no longer disabled). (R. 26-27).

He determined Mr. Whittington is capable of light work with the following additional limitations: (1) no climbing of ladders, ropes, or scaffolds, or work at unprotected heights or around dangerous machinery; (2) only unskilled work that is not fast-paced, but has a regular routine without much variation from day to day; and (3) work requiring only occasional contact with supervisors, co-workers, and the general public. (R. 27).

Based on the opinion of a vocational expert, the ALJ found that Mr. Whittington could not perform his past relevant work in the fast food business because the job requires contact with the public, and thus its social demands exceed his functional capacity. At step eight, and also based on the VE's opinion, the ALJ decided that as of December 14, 2011, and beyond that date, Mr. Whittington is capable of performing the following jobs that exist in significant numbers in the relevant economy: housekeeping-cleaning, food preparation worker, and stocker. Accordingly, the ALJ concluded at step eight that Mr. Whittington's disability ended as of December 14, 2011.

**II.     Analysis of Mr. Whittington's Assertion of Error**

Mr. Whittington makes no contention that the ALJ's evaluation of his mental impairments was erroneous. He raises one error—it relates to an opinion by Dr. J. Nathan Smith, the state agency consultative examiner. Mr. Whittington asserts that Dr. Smith's opinion proves he "continues to be disabled as no medical improvement occurred in regards to the severe impairment of residuals of remote gunshot wound to the right leg." (Dkt. 16 at p. 7).

Dr. Smith saw and evaluated Mr. Whittington on January 4, 2013. Based on that visit, Dr. Smith issued a four-page narrative report (R. 271-274) and completed a six-page form titled "Medical Source Statement of Ability to do Work-Related Activities." (R. 275-280). Page two of the Work-Ability form contains a section for checking boxes denoting the number of hours the patient can sit, stand, and walk (i) at one time without interruption and (ii) in total during an eight-hour workday. The form permits the length of time to be expressed in minutes, if the time is less than one hour. Dr. Smith wrote that Mr. Whittington can sit and stand only 20 minutes at a time and walk only 10 minutes at a time, and he is capable of sitting, standing, and walking only one hour each in a workday. (R. 276). The form asks for a description of the person's activity for the remainder of an eight-hour day if the sitting/standing/walking time is less than eight hours. Dr. Smith wrote, "laying down." (*Id.*) It also asks for the identification of findings supporting the

assessment. Here, Dr. Smith wrote, "subjective pain" and "mild RLE [right leg] weakness." (*Id.*)

Mr. Whittington claims the ALJ ignored this opinion and did not address its weight. He asserts an error of law therefore occurred because an ALJ's decision cannot fail to evaluate medical opinions and cannot ignore important evidence contrary to the ALJ's conclusions. The Commissioner does not disagree (nor does the court) with the general principles that an ALJ must explain his evaluation of medical opinions and cannot ignore a line of evidence contrary to his conclusions. *E.g., Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012) (In connecting the evidence to a conclusion, an ALJ "may not ignore entire lines of contrary evidence."); 20 C.F.R. § 404.1527(c) (requiring the Agency to evaluate medical opinions in the record).

The issue is whether the record supports Mr. Whittington's assertion the ALJ ignored Dr. Smith's opinion. While it is true the ALJ did not specifically mention that portion of the Work-Ability form indicating Mr. Whittington cannot sit, stand, or walk more than an hour apiece, cannot sit or stand for more than 20 minutes at one time, and cannot walk for more than 10 minutes at one time, the ALJ's decision reflects his studied review of the narrative portion of Dr. Smith's evaluative report. The ALJ also examined and addressed all other evidence in the record documenting medical evaluations of Mr. Whittington's physical capabilities.

The court is convinced that any error by the ALJ in failing specifically to mention the portion of the Work-Ability form upon which Mr. Whittington's entire

argument relies is harmless and does not require remand. *See Schomas v. Colvin,* 732 F.3d 702, 707-08 (7th Cir. 2013) (error may be considered harmless and not require remand if the court can predict with great confidence what the ALJ would do on remand and that the result would be the same); *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) (same).

The court has great confidence the ALJ would reach the same conclusion if there was a remand and he were required specifically to mention the Work-Ability form. A reasonable reading of the ALJ's decision indicates the ALJ did not at all ignore Dr. Smith's Work-Ability form, even though he didn't mention it by name. And even if the ALJ had somehow overlooked Dr. Smith's form altogether, the ALJ clearly expressed his view that Mr. Whittington had far greater capabilities to sit, stand, and walk than the form states, and rationally explained the bases for that view.

The ALJ addressed in detail Dr. Smith's report of his clinical evaluation of Mr. Whittington. He explained that Dr. Smith's exam of Mr. Whittington revealed: (1) Mr. Whittington's hips, knees, and extremities were normal; (2) neurologically, sensation was intact; (3) knee and Achilles reflexes were normal; (4) there was no evidence of muscle atrophy; (5) motor strength was normal at 5/5, except there was a slight decrease in motor strength to 4/5 in the right thigh and lower limb; (6) Mr. Whittington was stable at station and appeared to be comfortable whether sitting or lying down; (7) his gait was stable and within normal limits; (8) he could walk on his heels and toes; (9) he could stand on either leg alone; and (10) he could perform

a full squat without difficulty. (R. 23-24). Mr. Whittington does not challenge this description by the ALJ of Dr. Smith's clinical findings.

The ALJ also clearly expressed his view that "[t]he *clinical* record does not show any significant problems with sitting, standing, or walking," despite considering in combination Mr. Whittington's residual pain from his gun shot wounds, the "limited mobility in his right knee, and mild weakness in the right lower limb." (R. 26; emphasis added). Mr. Whittington does not challenge the ALJ's conclusion about the state of the "clinical" record.

The ALJ also clearly expressed his view that Mr. Whittington's "purely subjective complaints [about the limiting effects of his impairments] are not fully credible because they are not reasonably consistent with the overall evidence of record." (R. 26). Mr. Whittington does not challenge the ALJ's assessment of his credibility.

As noted earlier, Dr. Smith stated that the underlying support for the limits to Mr. Whittington's sitting/standing/walking to less than one hour each in a workday was based on subjective pain symptoms and mild right leg weakness. (R. 276). As also noted above, the ALJ specifically addressed both factors in his evaluation of Mr. Whittington's RFC. He considered the "mild weakness in the right lower limb" and compared that weakness (together with pain and limited mobility in the right knee) to the clinical record to find the absence of significant problems with sitting, standing, or walking. (R. 26). He also found Mr. Whittington's subjective complaints not fully credible. (*Id.*) Thus, the ALJ

implicitly (if not explicitly) rejected the extraordinary limitations on sitting/standing/walking written by Dr. Smith and provided reasoned support for that rejection.

Accordingly, the sole asserted error raised by Mr. Whittington is harmless—if it indeed was error at all.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Mr. Whittington is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated:  February 5, 2016

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system